KUHN BROS. *v.* BOARD, MAYOR AND ALDERMEN OF THE
CITY OF VICKSBURG.

[56 South. 526.]

TAXATION. *Reduction. Merchandise. Valuation. Evidence.*

> In a proceeding by the owner of merchandise destroyed by fire
> to have the valuation for taxes reduced, evidence that the owner
> had collected fire insurance on the property to a much larger
> amount than the property had been assessed for taxes, is admis-
> sible.

APPEAL from the circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

Action brought by Kuhn Bros. against the mayor and
board of aldermen of the city of Vicksburg for a reduc-
tion of the assessment on his stock of merchandise. From
a judgment for defendant, plaintiffs appeal.

"It is agreed that the entire record, as it now appears
as case No. 15052, in the supreme court of Mississippi,
will be used in so far as it is applicable on the trial of
this case, by either party to this litigation.

"(2) The following additional facts will be admitted
and made a part of the record in this trial, viz.: "That
on February 12, 1910, Kuhn Bros., plaintiffs here, were
insured against loss or damage by fire on their stock of
goods by contract with various insurance companies.
That said stock of goods, which was assessed at fifty thou-
sand dollars, and the assessment of which is here in
question, was the subject of the insurance, and that on
the 14th day of May, 1910, the sum of seventy-six thou-
sand dollars was paid to said Kuhn Bros. on said con-
tracts of insurance. That all of said contracts of insur-
ance were identical, except as to the respective amounts.
That the body of each of said policies was the same in-
surance contract in common use in this state at the time,

and is the same in common use at the present time, and is generally known and described as the New York standard form of insurance policy. That the form attached to each policy, except as to amount, was as follows:

" 'For Building, Stock and Fixtures, or Stock only.

$2,500.00.  On their stock of merchandise, consisting of dry goods, clothing, notions, and such other merchandise not more hazardous as is usually kept for sale by assured.

None.  On store and office furniture and fixtures, including iron safe.

All while contained in the three-story and basement brick building with metal roof, occupied as a dry goods and clothing store, situate No. 113, on the west side of North Washington street in Vicksburg, Mississippi.

None.  On the above-described building.

" 'Iron Safe Clause.

" ' (1) The assured shall take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken of the property covered by this policy within twelve calendar months prior to the date thereof, one shall be taken in detail within thirty days after date hereof, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

" ' (2) The assured shall keep a set of books, which shall clearly and plainly present a complete record of business transacted in reference to the property herein mentioned, including all purchases, sales, and shipments, both for cash and credit, from the date of the inventory provided for in the preceding section, and during the life of this policy, or this policy shall be null and void.

" ' (3) The assured shall keep such books and inventory, and also the preceding inventory, if such has been

taken, and also all books kept in his business since the date of such last preceding inventory securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or shall keep such books and inventories in some secure place not exposed to a fire which would destroy the aforesaid building, and after a fire shall produce all such books and inventories, and deliver the same to this company for examination, or this policy shall be null and void, and no suit or action shall be maintained thereon for any such loss. It being agreed that the receipt of such books and inventories and the examination of the same shall not be an admission of any liability under the policy, nor a waiver of any defense to the same.

" 'Three-Fourths Value Clause.

" 'It is understood and agreed to be a condition of this insurance that, in the event of loss or damage by fire to the property insured under this policy, this company shall not be liable for any amount greater than three-fourths of the actual cash value of each item of property insured by this policy (not exceeding the amount insured on each such item) at the time immediately preceeding such loss or damage; and in the event of additional insurance, if any be permitted hereon, then this company shall be liable for its proportion only of three-fourths such cash value of each item insured at the time of the fire, not exceeding the amount insured on each such item.

" 'Permission granted to keep for sale not to exceed fifty pounds of gunpowder and five barrels of kerosene oil (which shall not be less than the United States standard of 110 degrees), neither to be handled nor sold within fifteen feet of artificial light.

" 'Lightning Clause.

" 'This policy shall cover any direct loss caused by lightning, (meaning thereby the commonly accepted use

of the term lightning, and in no sense to include loss by cyclone, tornado, or wind storm), not exceeding the sum insured, nor the interest of the insured in the property, and subject in all other respects to the terms and conditions of this policy. Provided, however, if there be any insurance on said property, this company shall be liable only pro rata with such other insurance for any direct loss by lightning, whether such other insurance be against direct loss by lightning or not.

" 'Electric Light Clause.

" 'Privilege to use electric lights in the above-mentioned premises when the electric equipment is in full compliance with the standard of the National Electrical Code, but it is mutually understood and agreed that this policy shall not cover on said electric light apparatus and attachments, unless specifically and separately insured.

" '$—— total concurrent insurance permitted, including this policy, as follows: $—— on stock; $——— on building; $—— on furniture and fixtures.

" 'Attached to and forming the written and descriptive part of policy No. ——— of ——— Insurance Company of ———.

" '_____ Agents.

" 'R. C. Wilkerson, Agent, Vicksburg, Miss.'

"It is further agreed that, in order not to incumber the record any more than possible, the lower court, and the supreme court, if the case should be appealed, is requested to take notice of the terms and conditions of the New York standard form of policy just as if it had been fully set out in the record.

"That the rate of taxation in the city of Vicksburg was and is twenty mills (20 mills)."

*McLaurin, Armistead & Brien,* for appellant.

When *Kuhn Bros. v. Warren County,* 54 Miss. 442, was decided by this court, our first impulse was, of course,

to file a suggestion of error and let it take the usual course. We got the record and a copy of the opinion and began to consider the matter for that purpose. We then realized that there was no copy of the insurance contracts before the court in the Warren County case, so the court could not officially be advised either as to the character, contents, terms or conditions of those insurance contracts, and realizing that this case was shortly to come on trial we determined to make the insurance contracts a part of the record, so that in passing on this case these contracts would be before the court.

Now, by agreement, the court knows that the New York standard form of insurance contract is the one in question, and with this form the court is, of course, entirely familiar. If not, it can be examined by referring to any text book on insurance, for instance, 1 Clement, page 474.

We now respectfully submit that when this court announced in *Kuhn Bros.* v. *Warren County*, 54 So. Rep. 443, referring to the testimony as to insurance carried being admitted that "the testimony was excluded by the court and improperly excluded," it erred.

That is, if it be conceded that when this court made this announcement it had in mind insurance collected by reason of an indemnity contract such as insurance policies of the New York standard afford. However, in the Warren County case the insurance contracts were not before the court, and considering that when Mr. Kuhn was on the witness stand he was simply asked if he had insurance on his stock as follows:

"Q. Now, Mr. Kuhn, you had insurance on that stock of goods, didn't you?"

(Objected to. Objection sustained and the defendant then and there excepted to the ruling of the court.) Again, "Now, Mr. Kuhn, was it not a fact you collected $76,000 in cash for insurance on that stock of goods which was burned on the 12th of February of this year?"

(Objected to. Objection sustained and defendant then and there excepted to the ruling of the court.)

By the language of these questions it would appear that the insurance was actually on the stock burned, and the court having sustained the objection to the witness answering these questions, this court on appeal, and indeed, the court below, on that trial, had no means of determining whether the insurance in question was really an indemnity to the owner of the stock of goods or was really an actual insurance on the thing lost, the stock of goods, the property to be taxed. We cannot, therefore, for certain say what this court had in mind in delivering its opinion in the Warren County case as to what this contract was, but we are forced to conclude from the language of the court that it entertained the view that the insurance was really on the thing, the stock of goods, and not an indemnity. The court (54 So. Rep. 443), said:

"If the goods were fully covered by insurance, the appellants lost nothing so far as the assessment is concerned, by reason of the fire. The fire merely changed the form of value from goods to money. If the appellant had sold the goods on the 12th of February, to a purchaser in the state of Louisiana, and such purchaser had immediately paid cash for the goods, it would hardly be contended that the appellants would, on that account be entitled to a reduction. If they sold the goods to the insurance company through the medium of the insurance policy, the principle is the same."

From this it would seem that the court entertained the view that the insurance was on the thing itself and not an indemnity, and herein we respectfully submit, was the fatal error of the court in this opinion, unless, as might be inferred from the opinion, and as to this there is nothing in the record to suggest it, that the assured, Kuhn Bros., designedly destroyed the property in order to get the insurance.

We will not take up the time of the court in drawing any distinction between a contract that actually insures the thing destroyed and the contracts in question, which are simply contracts of indemnity.

If this court in the Warren County case was of the impression that it was the actual thing itself that was insured it is excusable because the contract is not really before the court, and the language of the questions put to Kuhn Bros., would justify the inference that the thing itself was insured.

Now that the contracts of insurance are before this court and it is manifest that they are simply contracts of indemnity, as all the courts including this court have universally held, we think there is a broad distinction in legal conclusions to follow. In other words, it is not a similar and just comparison or illustration to say that the result of the collection of this insurance is as "if the appellants had sold the goods on the 12th of February to a purchaser in the state of Louisiana, and the purchaser had immediately paid cash for the goods and taken them into that state." Certainly under this state of facts we would not be here contending that the assessment of the stock of goods, which had been subsequently converted into money, should be annulled and reduced and because in that case there would be an actual conversion of the goods into cash, the purpose for which the goods were purchased, and the cash would actually stand in lieu of the goods. It would be, in legal effect, the identical property and therefore subject to the same assessment and liable to the same tax. Such is not the case, however, where the contract is one of indemnity as is the New York standard form. This has been specifically held, as stated, in this state. See *Smith* v. *Ratcliff,* 66 Miss. 682.

*Anderson, Voller & Foster,* attorneys for appellee.

We are perfectly content to rest the decision of this case on the *Warren County case,* 54 South. 442, without

further argument, for we are sure that the decision in that case is sound and righteous and that no amount of argument will shake the court from its position there taken. But as opposing counsel seem to think that the court in that case was not accurately advised as to the kind and nature of the insurance policies carried by appellants, and for that reason a wrong conclusion was reached, and that there was, therefore, such error in that decision that it will not be applied to and is not decisive of the instant case, we will briefly notice their contention, notwithstanding it is so refined and technical that we doubt if it will be seriously considered by this court. Their contention is that this insurance money can in no sense be considered as taking the place of the destroyed goods; because, forsooth, the policies did not insure the goods themselves, but were only a contract of indemnity to the owners against the loss of the goods. To put it in the language of Judge Campbell in the case relied on: The goods were not insured. The owners were insured by the contract to pay them a sum of money as indemnity against loss. *Smith* v. *Ratcliff,* 66 Miss. 687.

We might effectually answer this argument by saying that whether the goods themselves were insured, or whether the owners were simply indemnified against their loss, the result was exactly the same, for the insurance money due on account of the policies taken out in connection with the goods, was collected, appropriated and used by the owners, and there is no substantial reason for their complaint in this proceeding.

But it will be observed that in the Smith case the court rests its decision, in refusing to exempt the insurance money on destroyed exempt property, solely on the ground that the statute itself does not so exempt it. The court went further and said that even purchase money due on exempt property would not be exempt because not made so by statute. While the point was made in that decision, that the insurance could not be held to take the

place of the property because it was not on the property itself, but was simply an indemnity to the owners against loss of the property, still the lack of a statute exempting the money was the sole reason of the decision. And notwithstanding the nature of the policy, which it will be observed was the same kind exactly as those held by appellants, the court expressed the wish that the legislature might exempt such a fund where the property destroyed was itself exempt. Notice the language: "We too think, with the Texas court, that the proceeds of the policy should be exempt as the house was, but the statute has not made it so." Ib., 688.

SMITH, J., delivered the opinion of the court.

The evidence in this case is identical with that in the case of *Kuhn Bros.* v. *Warren County*, 54 South. 442, with the exception that in this case there is an agreement of counsel relative to the character of insurance policies which had been taken out by appellant on the stock of goods in question. After a careful examination of the rule announced in that case by a majority of this court, in the light of this agreement of counsel, we are of the opinion that it is correct, and that, consequently, the court below committed no error in admitting the testimony relative to the amount of insurance collected by appellant upon the stock of goods in question.

*Affirmed.*